IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Christina Howe,

        Case No. 3:21-cv-01530-JGC

    Plaintiff,

    v.        **ORDER**

Wilson Sporting Goods Co.,

    Defendant.

In this action, plaintiff Christina Howe alleges that Defendant Wilson Sporting Goods Co. ("Wilson") terminated her employment in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA"), the Americans with Disabilities Act, 42 U.S.C. § 12102 et seq. (the "ADA"), and Ohio's Civil Rights Commission statute, O.R.C. § 4112.01. Pending is Wilson's Motion for Judgment on the Pleadings. (Doc. 7).

For the reasons set out below, I deny Wilson's motion as to Howe's FMLA claims and grant it as to her disability discrimination claims.

## Background

Howe's complaint contains the following material factual allegations regarding her FMLA claim.

Howe began working for Wilson in 2002 as a lacer. (Doc. 1, pgID 2). Her son suffered from Dravet Syndrome, a rare, drug resistant form of epilepsy.[1] In or about October 2016, Howe applied for intermittent FMLA leave to care for her son, and Wilson approved it. (*Id.*, pgID 3).

Despite approving Howe's FMLA leave, Wilson gave Howe disciplinary points when she missed work to care for her son. (*Id.*). Wilson ultimately terminated her employment as the result of her missing work for FMLA leave. (*Id.*).

On or about March 13, 2020, Wilson reinstated Howe to her position. (*Id.*). On or about May 6, 2020, Howe did not show up for work and did not call off until three hours later because her son had a series of seizures that kept her awake most of the prior night, and she slept through her alarm. (*Id.*). That same day, Wilson terminated Howe's employment for a second time based on her attendance. (*Id.*, pgID 3-4).

As to Howe's disability discrimination claims, the complaint alleges that her son has a disability that significantly limits him in one or more major life activities. (*Id.*, pgID 3). Wilson knew of Howe's son's condition and discriminated against her based on the that disability or its perception of that disability. (*Id.*, pgID 6).

## Discussion

### 1. FMLA Claims

After her termination, Howe sought unemployment compensation from the Ohio Department of Job and Family Services. (Doc. 6-3, pgID 84). That department denied her claim, and she appealed to the Ohio Unemployment Compensation Review Committee (the

---

[1] https://www.epilepsy.com/learn/types-epilepsy-syndromes/dravet-syndrome#:~:text=Dravet%20syndrome%20is%20a%20rare,to%20severe%20SCN1A%20gene%20mutations.

"Committee"). After a hearing in which Howe appeared pro se, the Committee denied her application, finding that she was terminated for just cause. (*Id.*, pgID 86).

In its opening brief, Wilson argued that the Committee's decision "establish[es]" as "uncontroverted" fact that it fired Howe for just cause. (Doc. 7, pgID 100). It also contended that the Committee's decision conclusively establishes that Howe was not eligible for FMLA leave because she had not worked long enough to qualify for such leave. (*Id.*, pgID 100-01). Neither argument has merit.

### A. The Committee Decision's Preclusive Effect

Wilson argues that I may take judicial notice of the Committee's decision as a public record. That argument is true as far as it goes, but it does not go nearly as far as Wilson would have it.

"[J]udicial notice does not apply to establish the truth of a factual dispute." *Davidson v. Warden, Warren Corr. Inst.*, No. 2:18-CV-00495, 2021 WL 1964487, at *1–2 (S.D. Ohio) (citing *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858, 878 (E.D. Tenn. 2005)). "'[A] court may take notice of the documents and what they say, but it [cannot] consider the statements contained in the document for the truth of the matter asserted.' In other words, a court may take judicial notice of the document's existence but cannot take judicial notice of the document's substance." *Id.* (citations and internal quotation marks omitted) (quoting *Platt v. Bd. of Comm'rs on Grievs. & Discipline of Ohio Supreme Court*, 894 F.3d 235, 245 (6th Cir. 2018)).

Indeed, even as to court records, a subsequent court "will only take notice of the *existence* of these filings and their contents. Not only would considering their contents to resolve factual disputes be improper, but on a Rule 12(c) motion the Court must regard

3

the factual allegations in the complaint as true." *United Pet Supply, Inc. v. City of Chattanooga*, 921 F. Supp. 2d 835, 843–44 (E.D. Tenn. 2013) (emphasis in original) (citations omitted).

Thus, I may take notice that the Committee denied Howe's claim, but I cannot properly take notice of the merits of that denial.[2]

Wilson is mistaken when it attempts to expand the doctrine of judicial notice to give the Committee's decision preclusive effect. As the court in *McCarthy v. KFC Corp.*, 607 F. Supp. 343, 346 (W.D. Ky. 1985), explained:

> If this allegation is an attempt to have the Court give preclusive effect to that finding, the attempt is fruitless. Even if the Court were to elevate the decision of the Commission to the level of an arbitrator's award, it cannot be given preclusive effect. *McDonald v. City of West Branch, Michigan,* 466 U.S. 284, 104 S. Ct. 1799, 80 L.Ed.2d 302 (1984).

"Because § 1983 creates a cause of action, there is, of course, no question that Congress intended it to be judicially enforceable." *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 290 (1984). The Supreme Court has held that even an arbitrator's decision is not entitled to preclusive effect for claims based on 42 U.S.C. § 1983, stating that its "decisions in *Barrentine*

---

[2] At summary judgment or at trial, testimony or other factual matters from an unemployment benefits proceeding could be admissible. *See Goddard v. Allegiance Adm'rs, LLC*, No. 2:19-CV-1506, 2021 WL 184644, at *8 (S.D. Ohio 2021). A court ruling on summary judgment may "consider[ a] prior arbitration as a factor in their calculus." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 549 (6th Cir. 2008). Before doing so, however, it must evaluate "the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators," or when "the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record." *Id.*

This case is not at summary judgment or trial. Factual disputes cannot be resolved on a Rule 12(c) motion. *Certain Underwriters, supra*, 855 F. Appx.at 270. In addition, I lack any evidence to determine "the degree of procedural fairness" in the Committee's process. And, what Wilson asks that I accept as conclusive evidence is not solely one of fact but is the mixed factual and legal determination that it terminated Howe for just cause. Wilson has identified no precedent for its claim that I should give preclusive effect to the Committee's "just cause" finding in deciding a motion for judgment on the pleadings.

and *Gardner–Denver* compel the conclusion that it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." (*Id.*)

Thus, a decision of the Ohio Unemployment Compensation Review Commission "is not relevant for purposes of determining whether plaintiff has satisfied the legal burdens she bears associated with proving pretext in an employment discrimination lawsuit." *Durden v. Ohio Bell Tel. Co.*, No. 1:12 CV 734, 2013 WL 1352620, at *9 (N.D. Ohio) (Gaughan, J.).

In its reply brief, Wilson alters its position, arguing that rather than giving the just cause finding estoppel effect, I should treat it as "undisputed evidence "which requires judgment in favor of Wilson." (Doc. 10, pgId 122).[3] Wilson contends that I should treat the finding as undisputed because "Howe could have come forward with evidence to the contrary." (*Id.*).

Howe's new argument misses the point. A motion for judgment on the pleadings is not a vehicle for resolution of disputed facts. *See Certain Underwriters at Lloyd's of London Subscribing to Policy*, 855 F. App'x 260, 270 (6th Cir. 2021). This is not a summary judgment motion. Howe had no obligation to present contrary factual evidence in response to create a triable issue of material fact.

Indeed, Howe could not properly have done so because, as Wilson recognizes, in deciding its Rule 12(c) motion, I may consider only "the complaint, the defendant's motion to dismiss as well as 'public records and matters of which a court can take judicial notice.'" Had I permitted Howe to present contrary evidence, I would have been required to convert the motion

---

[3] Even apart from the argument's lack of merit, I would not grant Defendant's motion on an argument asserted for the first time in a reply brief. *Toth v. Ford Motor Co.*, No. 1:08-CV-00391-JG, 2008 WL 11380224, at *1 (N.D. Ohio) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008)).

5

to a summary judgment motion. Had I done so, Howe would be entitled to discovery before filing a response.

There has been no opportunity for discovery in this case. At this early stage, I will not permit Wilson to pursue summary judgment without discovery merely because it has filed a meritless Rule 12(c) motion.[4]

### B. Wilson's Argument that Howe Was Not Qualified for FMLA Leave

Wilson argues that the Committee's decision conclusively establishes that Howe "had not worked long enough to be eligible for FMLA." (Doc. 7, pgID 100). Even apart from my holding above that the Committee's decision is not preclusive, the argument lacks merit. It simply mischaracterizes the record. The paragraph Wilson cites from that decision reads:

> Claimant thought the reason she did not appear for work on May 6, as well as the reason she failed to timely call off, were the type of situation which would not count against her, according to the last chance agreement. Employer stated that the late call off and the unapproved absence on May 6 were both violations of the last chance agreement. The leave was not approved because claimant had not worked long enough to be eligible for FMLA. Claimant also

---

[4] Wilson raises an additional argument against Howe's FMLA retaliation claim. It contends that Howe cannot plausibly plead a causal connection between her FMLA leave and her termination because it fired her for attendance violations. That argument fails in a motion for judgment on the pleadings because it rests on a disputed fact. The determinative question for FMLA retaliation purposes is not merely whether the employee has violated the employer's rules but whether the rules violation or the employee's exercise of FMLA rights was the motive for the employer's adverse employment action. "[A] an employer's motive is relevant to an FMLA retaliation claim 'because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights.'" *Wallner v. Hilliard*, 590 F. App'x 546, 551 (6th Cir. 2014) (quoting *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006)).

Here, Howe has alleged that Wilson granted her request for FMLA leave but gave her disciplinary points and then terminated her for exercising that leave. Wilson has not argued that Howe agreed to waive her claims for those violations as part of the reinstatement agreement. Howe's retaliation allegation is sufficient to state a claim; whether the evidence supports that claim is a matter for summary judgment or trial.

> disputed she had seven and a half occurrences on February 11, 2020, however she did sign the last chance agreement.

(Doc. 6-3, pgID 85).

It is readily apparent that, in the quoted paragraph, the Committee was merely recounting the parties' positions, not adopting either of them. Indeed, the Committee's subsequent paragraphs titled "Issue," "Law," "Reasoning" and "Decision" solely address the issue whether Wilson had just cause for the termination and did not even mention FMLA-eligibility. The argument that the Committee made any determination as to FMLA eligibility is untenable.

### 2. Disability Discrimination Claims

Howe contends in Count III of her complaint that Wilson discriminated against her based on her son's disability. The ADA precludes discrimination "because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." ("associational discrimination") 42 U.S.C. § 12112(b)(4).[5]

Associational discrimination claims are analyzed under the traditional *McDonnell Douglas Corp. v. Green* burden-shifting analysis. *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011). Under that analysis:

> a plaintiff must first prove a prima facie case of retaliation, and the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the plaintiff's termination. . . . If the defendant sets forth such a reason, the plaintiff must show that the nondiscriminatory reason is pretext.

*Algie v. N. Ky. Univ.*, No. 08-109-DLB, 2013 WL 624396, at *6 (E.D. Ky.).

---

[5] The Sixth Circuit has held that "discrimination by association does not exist under Ohio Revised Code § 4112.02. *Eddy v. J&D Home Improvement, Inc.*, No. 2:17-CV-1113, 2018 WL 2287890, at *2 (S.D. Ohio) (citing *Smith v. Hinkle Mfg.,* 36 F. App'x. 825, 830 (6th Cir. 2002)). Accordingly, I grant Wilson's motion for judgment on the pleadings as to Howe's claim in Count IV of her complaint for disability discrimination under Ohio law.

The Sixth Circuit has adopted a modified version of the test to apply to ADA associational discrimination claims. Under that test, to establish a prima facie case of associational discrimination an employee must show:

> (1) the employee was qualified for the position; (2) the employee was subject to an adverse employment action; (3) the employee was known to be associated with a disabled individual; and (4) the adverse employment action occurred under circumstances that raise a reasonable inference that the disability of the relative was a determining factor in the decision.

*Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 487 (6th Cir. 2011) (citing *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1084 (10th Cir. 1997)).

To properly apply this test, it is important to keep in mind the distinction between an associational ADA claim and an ADA claim that is based on the employee's own disability. Unlike in the case of an employee who is disabled, "employers are not required to provide reasonable accommodations to non-disabled workers" even if they are associated with a disabled person, such as a son. *Id.* at 486 (citing *Larimer v. Int'l Bus. Machs. Corp.*, 370 F.3d 698, 700 (7th Cir. 2004), and *Den Hartog, supra*, 129 F.3d at 1084)).

The Sixth Circuit has explained the types of conduct that constitute associational discrimination:

> There are typically three theories of ADA associational discrimination: "(1) expense; (2) disability by association; and (3) distraction." *Stansberry*, 651 F.3d at 487 (internal quotation marks omitted). Under the expense theory, an employer violates the ADA if it takes an adverse employment action against an employee because of the cost of insuring the associated disabled person under the employer's health plan. *Id.* The disability-by-association theory takes two forms: (1) if "the employer fears that the employee may contract the disability of the person he or she is associated with," or (2) if "the employee is genetically predisposed to develop a disability that his or her relatives have." Id. Under the distraction theory, an employer violates the ADA if it discriminates against an

8

>employee because the employee has been "somewhat inattentive at work because of the disability" of the associated person. *Id.*

*Williams v. Union Underwear Co.*, 614 F. App'x 249, 254 (6th Cir. 2015); *but cf. Stansberry, supra*, 651 F.3d at 487 (the three types of associational discrimination are "not necessarily an exhaustive list").

Thus, the gravamen of associational discrimination claims is that the employer takes adverse employment action against an employee because of concern that, in the future, the employee will develop the same disability as the disabled associated person, the associated person's disability will affect the employee's work performance, or the associated disabled person's condition will raise the employer's insurance costs. The associational discrimination theory does not apply to an employee whose work performance, in fact, already has been below the employer's standards. "Section 12112(b)(4) is meant to protect individuals from being discriminated against based on an unfounded fear that the individual's job performance will suffer in order to care for the associated disabled person but does not require employers to provide any reasonable accommodations to the non-disabled employee." *Copeland v. Mid-Michigan Reg'l Med. Ctr.*, No. 11-10633, 2012 WL 511534, at *8 (E.D. Mich.)

As the court in *Stansberry* explained, if an employee "violates a neutral employer policy concerning attendance or tardiness he or she may be dismissed even if the reasons for the absence or tardiness is to care for the spouse. The employer need not provide any accommodation to the nondisabled employee." *Stansberry, supra*, 651 F.3d at 486 (quoting H.R. Rep. No. 101–485, pt. 2, at 61–62 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 343–44).

With these principles in mind, it is apparent that Howe has failed to plead a viable associational discrimination claim. She cannot make out a prima facie case because she cannot meet the fourth part of the *Stansberry* test: that the adverse employment action occurred under

circumstances that raise a reasonable inference that the disability of her relative was a determining factor in the decision.

Howe's complaint stated that Wilson approved her request for intermittent FMLA leave to care for her son in October 2019. (Doc. 1, pgID 3). The complaint does not allege that Wilson took any action against her because it anticipated excessive future absences because of her association with her disabled son. When Wilson terminated Howe the first time, it did so pursuant to its disciplinary rules because her attendance record had violated its policies. *See* (*id.*, pgID 3) (alleging that Wilson gave Howe "disciplinary points' and then fired her for missing work due to her son's health condition).

Wilson reinstated Howe under a "last chance" agreement that conditioned her continuing employment on having no additional policy violations. *See* (Doc. 6-3, pgID 84-85). Wilson terminated her employment the second time because she committed another violation by failing to appear for a 6:00 a.m. shift and not calling off until three hours later. (*Id.* pgID 85).

These circumstances do not raise an inference that Howe's son's disability was the determining factor in Wilson's decision to fire her. Wilson granted Howe's request for intermittent FMLA leave in October 2019. (Doc. 1, pgID 3). It did not terminate her, however, until she had accumulated more incidents of calling-off late or not appearing for her shifts than Wilson's disciplinary policy permitted. And, Wilson gave Howe a second chance under a last chance agreement even though it knew of her son's disability and its potential future effect on her future attendance.

An employer may terminate an employee for violating its attendance policies. That the employee's "poor performance at work likely was due to [her son's] illness, . . . is irrelevant under [the associational discrimination] provision of the [ADA]." *Stansberry, supra*, 651 F.3d at

10

489; *Bimberg v. Elkton-Pigeon-Bay Port Laker Sch.*, 512 F. App'x 462, 464 (6th Cir. 2013) ( no associational discrimination claim where the evidence established employer terminated employee "for violating a neutral employer policy concerning attendance"); *see also Lyons v. Core Sys., L.L.C.*, No. 2:10-CV-75, 2011 WL 4402777, at *15 (S.D. Ohio) (same).

Here, the complaint and exhibits show that Wilson terminated Howe because of her attendance violations. Howe has presented no evidence that Wilson fired her because of concerns about the anticipated potential future effects of her son's disability. Thus, she has failed to state a valid claim for associational discrimination under the ADA.

Accordingly, it is ORDERED THAT:

1. Defendant's Motion for Judgment on the Pleadings (Doc. 7) is GRANTED IN PART AND DENIED IN PART as follows:

    A. The motion is denied as to Counts I and II;

    B. The motion is granted as to Counts III and IV; and

    C. The Clerk of Court shall forthwith set a status conference in this action.

So ordered

/s/ James G. Carr
Sr. U.S. District Judge